No. 00–55922.

United States Court of Appeals, Ninth Circuit.

Submitted April 17, 2001*

Filed May 7, 2001

George H. ROBINSON, Plaintiff–Appellee,

v.

Kingston W. PRUNTY, Warden, Calipatria State Prison, California; Silvia Huerta–Garcia, Chief Deputy Warden; A. Tutt, Captain; G.J. Janda, Correctional Lieutenant; D.L. Fish, Correctional Sergeant; M.E. Ortiz, Correctional Sergeant; W. Brumbaugh, Correctional Officer; Ruben R. Rosas, Correctional Officer; Armando F. Valenzuela, Correctional Officer, Defendants–Appellants.

* The panel finds this case appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Michelle A. Des Jardins, Deputy Attorney General, for the defendants-appellants.

George H. Robinson, Crescent City, California, pro se plaintiff-appellee.

Before: PREGERSON, FERNANDEZ, and GRABER, Circuit Judges.

PREGERSON, Circuit Judge:

Pro se prisoner George Robinson filed a 42 U.S.C. § 1983 suit against several prison officials and correctional officers (collectively, "the defendants") at the Calipatria State Prison in California, alleging that the operation of integrated exercise yards at Calipatria constitutes cruel and unusual punishment. The defendants moved for summary judgment on the ground that they were entitled to qualified immunity. The district court denied the defendants qualified immunity because there was a triable issue as to whether they were deliberately indifferent to an excessive risk that Robinson would be harmed when he was placed in an integrated yard. We have jurisdiction over the defendants' appeal pursuant to the collateral order doctrine, and we affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

George Robinson, an African–American prisoner at the Calipatria State Prison in California, is housed in the Administrative Segregation Unit, a "prison within a prison" that is reserved for inmates who have violated prison rules. Since 1996, Calipatria has followed the California Department of Correction's ("CDC") policy of maintaining racially integrated prison yards. Rob-

inson alleges that there are several race-based gangs at Calipatria. For example, Robinson alleges, the "Surenos" is a prison gang consisting of "foot soldiers for the Mexican Mafia." Robinson further alleges that most white inmates are members of white supremacy gangs such as the Aryan Brotherhood or Skinheads. Robinson alleges that at Calipatria, the white gangs have formed an alliance with the Surenos, and that members of these gangs are violently opposed to African–American inmates and Mexican–American inmates from Northern California.

Robinson alleges that the Administrative Segregation Unit is viewed as "headquarters" by many prison gangs and that each gang has representatives in the Unit. He claims that he was housed in various Administrative Segregation Units prior to the implementation of the CDC's yard integration policy, and that during that time, the prison officials would not place a Sureno inmate in the exercise yard at the same time as an African–American inmate or a Mexican–American inmate from Northern California for fear that they would attack each other. Robinson also alleges that even though prison yards are no longer segregated by race or gang affiliation, individual prison cells are segregated because it is widely understood that members of different gangs or races would attempt to kill each other solely on the basis of gang membership or race.

Under the current integrated yard policy, Calipatria takes some precautions to prevent altercations between inmates. The district court found that before an inmate may attend the yard, prison officials review the inmate's file to determine whether the inmate has any specific enemies or previous confrontations with other inmates in the Administrative Segregation Unit. Inmates are not assigned to yard groups that contain known enemies, or other inmates with whom they have had previous conflicts. Inmates are divided into integrated yard groups of thirty people or fewer, and are processed in handcuffs into the yard, singly or in pairs. Inmates are searched and scanned with a metal detector when they enter and leave the yard.

This civil rights lawsuit arises from two alleged attacks on Robinson that occurred while he was in the exercise yard. The first attack occurred on May 13, 1996. Robinson claims that as soon as he entered the yard, he was attacked by a Mexican–American inmate, Martinez, who was already in the yard. Robinson alleges that the correctional officers on duty in the yard watched the fight for about five minutes without attempting to stop it. According to Robinson, after about five minutes, one guard ordered the inmates to get down on the ground. Robinson alleges that he was unable to get down on the ground because Martinez belongs to a gang that orders its members to continue fighting until the guards fire shots, so Robinson was forced to continue defending himself. A guard eventually fired wooden blocks at Robinson and Martinez, and another guard threw a grenade that released tear gas. Robinson suffered some injuries from the attack, and he was provided with medical care. Robinson alleges that the guards lied on the incident report by describing the fight as "mutual combat," instead of noting that Martinez attacked Robinson.

The second attack occurred on May 25, 1996. Robinson was the first inmate in the yard. He alleges that before Miranda, a Mexican–American inmate, was released into the yard with him, one guard joked, "Robinson, let the other guy get all the way on the yard before you fight him, you can't rush him at the gate." Another guard asked Robinson if tear gas would

bother his asthma, and six other guards laughed at this comment. Robinson alleges that as soon as the guards released Miranda into the yard, Miranda attacked him. The guards fired wooden blocks, one of which struck Robinson in the leg. The guards also threw a tear gas grenade into the yard. Robinson alleges that the guards again falsified the incident report by describing the fight as "mutual combat" instead of noting that Miranda attacked him.

In 1998, Robinson filed a civil rights suit under 42 U.S.C. § 1983 against the defendants alleging that they violated his right to be free from cruel and unusual punishment because they were deliberately indifferent to the substantial risk that he would be seriously injured when he was placed in the prison yard with Mexican–American inmates. The defendants moved for summary judgment. The district court granted summary judgment to the defendants because Robinson did not introduce any evidence to support his opposition to the defendant's motion for summary judgment. The defendants, in contrast, presented evidence that they took steps to prevent violence in the yard.

On August 5, 1999, Robinson moved for reconsideration of the district court's order granting summary judgment to the defendants. Robinson attached to his motion videotapes depicting various confrontations between prisoners in the Administrative Segregation prison yard. Robinson attached a declaration explaining that he could not present the videotapes of the attacks against him because they had been destroyed. Robinson also attached numerous incident reports documenting physical confrontations between inmates of different races.

On the basis of this evidence, the district court held that Robinson raised a genuine issue of material fact "concerning whether [Robinson] was imprisoned under conditions posing a 'substantial risk of serious harm' and whether prison officials both knew of and disregarded an 'excessive risk to [his] health or safety.'" (Quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Accordingly, the district court granted Robinson's motion to reconsider the court's grant of summary judgment, and entered an order permitting Robinson to proceed with his Eighth Amendment claim. The district court's order stated that it would not revisit the issue whether the defendants were entitled to qualified immunity, but that they could renew their motion for summary judgment on this ground at a later time.

The case was then transferred to another judge. The defendants renewed their motion for summary judgment on the ground that they were entitled to qualified immunity with respect to Robinson's Eighth Amendment claim. The district court held that the defendants were not entitled to qualified immunity because there was a genuine issue of fact whether the defendants were deliberately indifferent to an excessive risk to Robinson's safety when he was placed in the exercise yard. The district court reasoned that if the defendants were, in fact, deliberately indifferent to this risk, then they could not possibly have believed that they were acting lawfully. If the defendants could not have believed that they were acting lawfully, the district court reasoned, then they are not entitled to qualified immunity. The defendants appeal.

## II.

## DISCUSSION

### A. Standard of Review

█ We review de novo the district court's determination regarding qualified

immunity. *Hamilton v. Endell*, 981 F.2d 1062, 1065 (9th Cir.1992) (citation omitted).

## B. Jurisdiction

■ Denials of summary judgment typically are not appealable. Where the ground for denying summary judgment, however, is that the defendant is not entitled to qualified immunity, we have jurisdiction over an interlocutory appeal on certain, limited grounds. *Schwenk v. Hartford*, 204 F.3d 1187, 1195 (9th Cir. 2000) (citing *Behrens v. Pelletier*, 516 U.S. 299, 312, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)). We may review the district court's order denying summary judgment only if the "issue appealed concern[s], not which facts the parties might be able to prove, but, rather, whether or not certain given facts show[ ] a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)). For purposes of this limited inquiry, "we assume the version of the material facts asserted by the non-moving party to be correct." *Schwenk*, 204 F.3d at 1195 (citing *Behrens*, 516 U.S. at 312, 116 S.Ct. 834; *Liston v. County of Riverside*, 120 F.3d 965, 977 (9th Cir.1997)).

■ We may not consider a defendant's appeal to the extent that it challenges the district court's finding of a triable issue of fact. *Johnson*, 515 U.S. at 313, 115 S.Ct. 2151 ("[T]he District Court's determination that the summary judgment record in this case raised a genuine issue of fact concerning [the alleged constitutional violation] was not a 'final decision' within the meaning of the relevant [jurisdictional] statute."). With these principles in mind, we consider whether the district court erred in denying qualified immunity to the defendants.

## C. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless, "in the light of pre-existing law[,] the unlawfulness of [their] conduct [is] 'apparent.'" *Schwenk*, 204 F.3d at 1196 (citation and internal quotation marks omitted). "In order to determine whether an official is entitled to qualified immunity, a court must (1) identify the right allegedly violated, (2) determine whether the right was 'clearly established,' and (3) determine whether a reasonable official would have believed his or her conduct to be lawful." *Hamilton*, 981 F.2d at 1066 (citation omitted).

■ Robinson alleges that the defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, he contends that the defendants were deliberately indifferent to an excessive risk that he would be seriously harmed if placed in a racially integrated yard. At the time Robinson was attacked in the Calipatria prison yard in 1996, the law regarding prison officials' duty to take reasonable measures to protect inmates from violence at the hands of other prisoners was "clearly established." *See Farmer*, 511 U.S. at 833, 114 S.Ct. 1970 ("[A]s the lower courts have uniformly held, and as we have assumed, 'prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'") (quoting *Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir.1988)). Deliberate indifference to the risk that an inmate will be harmed by other prisoners constitutes a violation of the Eighth Amendment. *Id.* at 833, 114 S.Ct. 1970; *see also Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir.1986) ("A prisoner may state a section 1983 claim under the eighth and fourteenth amendments against prison officials where the officials acted with 'deliberate indifference' to the threat

of serious harm or injury by another prisoner.") (citations omitted).

The only remaining question is whether a reasonable prison official would have believed his or her conduct to be lawful in light of this pre-existing law.[1] We must assume for purposes of this appeal that Robinson's version of the events is true. *See Schwenk*, 204 F.3d at 1195 (citations omitted). Robinson's evidence paints a gladiator-like scenario, in which prison guards are aware that placing inmates of different races in the yard at the same time presents a serious risk of violent outbreaks. The defendants' awareness of and indifference to this risk is demonstrated by the alleged frequency with which such outbreaks occur, by the alleged jokes made by the guards to Robinson before they released a Mexican–American inmate into the yard with him, and by the alleged fact that guards failed to intervene while Robinson was attacked by another inmate. We agree with the district court that if Robinson's gladiator-like scenario is true, then no reasonable prison official could have believed that his or her conduct was lawful. We therefore hold that the district court did not err in denying qualified immunity to the defendants.[2]

AFFIRMED.

---

1. We do not have jurisdiction on appeal to resolve the triable issue whether Robinson's evidence establishes an Eighth Amendment violation. *See Johnson*, 515 U.S. at 313, 115 S.Ct. 2151. We do have jurisdiction, however, to determine whether the unlawfulness of the defendants' alleged conduct would have been "apparent" in light of the clearly established law that prison officials are liable for civil damages if they are deliberately indifferent to a substantial risk of harm to prisoners.

2. We hold that the district court erred to the extent that it attempted to reinstate Robinson's "implied claim" that the defendants used excessive force to stop fights in the prison yard. Robinson's complaint simply does not allege an Eighth Amendment claim based on the use of excessive force.