Oliverio MARTINEZ, Plaintiff–
Appellee,

v.

CITY OF OXNARD; Oxnard Police De-
partment; Art Lopez, Chief; Maria
Pena; Andrew Salinas; Ron Zavala,
Defendants,

and

Ben Chavez, Defendant–Appellant.

No. 00–56520.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 2001

Filed Oct. 30, 2001

Alan E. Wisotsky, Oxnard, California, for the defendant-appellant.

R. Samuel Paz, Los Angeles, California, for the plaintiff-appellee.

Before: WARDLAW, PAEZ and TALLMAN, Circuit Judges.

TALLMAN, Circuit Judge:

We must determine whether a police officer who conducts a coercive, custodial interrogation of a suspect who is being treated for life-threatening, police-inflicted gunshot wounds may invoke qualified immunity in a civil suit for damages under 42 U.S.C. § 1983 (2001). Under the circumstances of this case, we hold he may not.

## I

On November 28, 1997, police officers Maria Pena and Andrew Salinas were investigating narcotics activity near a vacant lot in a residential area of Oxnard, California. While questioning one individual, they heard a bicycle approaching on the darkened path that traversed the lot. Officer Salinas ordered the rider, Oliverio Martinez, to stop, dismount, spread his legs, and place his hands behind his head. Martinez complied.

During a protective pat-down frisk, Officer Salinas discovered a knife in Mr. Martinez's waistband. Officer Salinas alerted his partner and pulled Martinez's hand from behind his head to apply handcuffs. Officer Salinas claims that Martinez pulled away from him. Martinez alleges that he offered no resistance. Either way, Officer Salinas tackled Martinez and a struggle ensued.

Both officers testified that during the struggle Martinez did not attempt to hit or kick them; Officer Salinas struck the only blow. The officers maintain that Martinez drew Officer Salinas's gun and pointed it at them. Martinez alleges that Officer Salinas began to draw his gun and that Martinez grabbed Officer Salinas's hand to prevent him from doing so.

All parties agree that Officer Salinas cried out, "He's got my gun." Officer Pena drew her weapon and fired several times. One bullet struck Martinez in the face, damaging his optic nerve and rendering him blind. Another bullet fractured a vertebra, paralyzing his legs. Three more bullets tore through his leg around the knee joint. The officers then handcuffed Martinez.

The patrol supervisor, Sergeant Ben Chavez, arrived on the scene minutes later along with paramedics. While Sergeant Chavez discussed the incident with Officer Salinas, the paramedics removed the handcuffs so they could stabilize Martinez's neck and back and loaded him into the ambulance. Sergeant Chavez rode to the emergency room in the ambulance with Martinez to obtain his version of what had happened.

As emergency room personnel treated Martinez, Sergeant Chavez began a taped interview. Chavez did not preface his questions by reciting *Miranda* warnings. The interview lasted 45 minutes. The medical staff asked Chavez to leave the trauma room several times, but the tape shows that he returned and resumed questioning. Chavez turned off the tape recorder each time medical personnel re-

moved him from the room. The transcript of the recorded conversation totals about ten minutes and provides an incontrovertible account of the interview.

Sergeant Chavez pressed Martinez with persistent, directed questions regarding the events leading up to the shooting. Most of Martinez's answers were non-responsive. He complained that he was in pain, was choking, could not move his legs, and was dying. He drifted in and out of consciousness. By the district court's tally, "[d]uring the questioning at the hospital, [Martinez] repeatedly begged for treatment; he told [Sergeant Chavez] he believed he was dying eight times; complained that he was in extreme pain on fourteen separate occasions; and twice said he did not want to talk any more." Chavez stopped only when medical personnel moved Martinez out of the emergency room to perform a C.A.T. scan.

Martinez filed a complaint under 42 U.S.C. § 1983 alleging that the officer defendants violated his constitutional rights by stopping him without probable cause, using excessive force, and subjecting him to a coercive interrogation while he was receiving medical care. He moved for summary judgment on each of his claims. The district court denied Sergeant Chavez's defense of qualified immunity and granted summary judgment for Martinez on his claim that Chavez violated his Fifth and Fourteenth Amendment rights by coercing statements from him during medical treatment.[1] In this interlocutory appeal, Chavez argues that the district court erred by holding that he was not entitled to qualified immunity.

## II

We have jurisdiction over Sergeant Chavez's interlocutory appeal of the purely legal question whether he is entitled to qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We review de novo the district court's determination on summary judgment that Chavez cannot invoke qualified immunity as a bar to civil litigation. *Robinson v. Prunty*, 249 F.3d 862, 865–66 (9th Cir.2001). For the purposes of this interlocutory appeal, we must accept as true the facts alleged by Martinez and determine whether Chavez is nonetheless entitled to qualified immunity as a matter of law. *Id.* at 866.

Section 1983 permits an individual whose federal constitutional or statutory rights have been violated by a public official acting under color of state law to sue the official for damages. Public officials are afforded protection, however, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity shields them "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. 2727. Only conduct that an official could not reasonably have believed was legal under settled law falls outside the protective sanctuary of qualified immunity. *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam).

To determine whether Sergeant Chavez is entitled to qualified immunity, we must first determine whether Martinez has stated a *prima facie* claim that Chavez

---

1. The district court denied summary judgment on Martinez's claims that he was improperly stopped by the police and that they used excessive force against him. Those claims will be tried to a jury.

violated one of his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, ——, 121 S.Ct. 2151, 2155, 150 L.Ed.2d 272 (2001). If we determine that Martinez has stated a *prima facie* case, then we must determine whether the right allegedly violated was clearly established by federal law. *Id.* We hold that Chavez violated the Fifth and Fourteenth Amendments by subjecting Martinez to a coercive, custodial interrogation while he received treatment for life-threatening gunshot wounds inflicted by other police officers.

■ In *Brown v. Mississippi*, 297 U.S. 278, 286, 56 S.Ct. 461, 80 L.Ed. 682 (1936), a unanimous Supreme Court condemned police officers' use of violence to coerce confessions from criminal suspects as "revolting to the sense of justice" embodied in the Constitution. Although the coercive tactics employed by the police in *Brown* involved physical violence, the Court clarified in subsequent opinions that the Fifth and Fourteenth Amendments also proscribe more subtle forms of police coercion. *See Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (holding that a confession obtained by refusing to let a suspect contact his wife was coercive and, therefore, unconstitutional); *Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (holding that a confession obtained by threatening a suspect with the loss of custody of her children was coercive and, therefore, unconstitutional); *Ashcraft v. Tennessee*, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944) (holding that prolonged interrogation without rest or contact with

individuals other than law enforcement officers was coercive and, therefore, unconstitutional).[2]

■ Chief Justice Warren observed in *Blackburn v. Alabama*, 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960), that "coercion can be mental as well as physical, and . . . the blood of the accused is not the only hallmark of an unconstitutional inquisition." A police officer's extraction of a confession is unconstitutional if, "considering the totality of the circumstances, the [officer] obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Coleman*, 208 F.3d 786, 791 (9th Cir.2000) (quotations and citation omitted); *see also Withrow v. Williams*, 507 U.S. 680, 689, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993).

■ Martinez argues that, considering the totality of the circumstances, Sergeant Chavez's interrogation was coercive and that it therefore violated the Fifth and Fourteenth Amendments. Chavez's coercive, custodial questioning violated the plaintiff's substantive Fifth Amendment right against compulsory self-incrimination. *Cooper*, 963 F.2d at 1235. Under *Cooper*, a Fifth Amendment violation occurs when a police officer coerces self-incriminating statements from a suspect in custody. *Id.* at 1236–37, 1242–44. The plaintiff in that case stated a cause of action under § 1983 for violation of his Fifth Amendment right against self-incrimination by alleging that police officers used deception and psychological coercion

---

2. Each of these cases holds that a coerced confession violates the Fourteenth Amendment and may therefore not be admitted at trial as evidence. None of them establishes a civil remedy for violation of the Fourteenth Amendment. *But see Cooper v. Dupnik*, 963 F.2d 1220, 1244–45 (9th Cir.1992) (en banc), *cert. denied*, 506 U.S. 953, 113 S.Ct. 407, 121

L.Ed.2d 332 (1992). Section 1983 requires only that the right, not the remedy, be established. Indeed, Congress's purpose in enacting § 1983 was to create a novel civil remedy for violation of established constitutional rights. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979).

to extract statements from him. *Id.* at 1242–43. Sitting *en banc*, we held that the officers' conduct violated the Fifth Amendment even though the plaintiff was never prosecuted, noting that the Fifth Amendment's purpose is to prevent coercive interrogation practices that are "destructive of human dignity." *Id.* at 1239 (quoting *Miranda v. Arizona*, 384 U.S. 436, 457–58, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). We echoed the Supreme Court's holding in *Miranda* that this animating purpose was adequately achieved only if the Fifth Amendment cast its protection against coerced self-incrimination not just over the courthouse, but also over the jailhouse, the police station, and other settings in which law enforcement authority was invoked to curtail a criminal suspect's freedom of action in any significant way. *Id.* at 1239.

■ Here, as in *Cooper*, a police officer's conduct "actively compelled and coerced" a plaintiff to utter statements that the plaintiff could reasonably believe might be used in a criminal prosecution or lead to evidence that might be so used. *Id.* at 1243; *see also Kastigar v. United States*, 406 U.S. 441, 445, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (holding that the Fifth Amendment "protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used"). Even though Martinez's statements were not used against him in a criminal proceeding, Chavez's coercive questioning violated Martinez's Fifth Amendment rights. *Cooper*, 963 F.2d at 1237; *see also California Attor-*

*neys for Criminal Justice v. Butts*, 195 F.3d 1039, 1047–49 (9th Cir.2000) (holding that *Miranda* and its progeny establish clearly and unequivocally that coercive, custodial interrogation violates the Fifth Amendment).[3] We affirm the district court's holding that Officer Chavez cannot invoke qualified immunity as a defense to Martinez's Fifth Amendment claims.

■ Likewise, a police officer violates the Fourteenth Amendment when he obtains a confession by coercive conduct, regardless of whether the confession is subsequently used at trial.

> The due process violation caused by coercive behavior of law-enforcement officers in pursuit of a confession is *complete with the coercive behavior itself. . . . The actual use or attempted use of that coerced statement in a court of law is not necessary to complete the affront to the Constitution.*

*Cooper v. Dupnik*, 963 F.2d at 1244–45 (emphasis added). Mr. Martinez has thus stated a *prima facie* case that Sergeant Chavez violated his Fifth and Fourteenth Amendment rights to be free from police coercion in pursuit of a confession.

■ We must now determine whether the rights that Martinez alleges Chavez violated were clearly established by federal law.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very ac-

---

**3.** We recognize the existence of Supreme Court dicta to the contrary. *See United States v. Verdugo–Urquidez*, 494 U.S. 259, 264, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990) ("The privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental trial right of criminal defendants. Although conduct by law enforcement officials

prior to trial may ultimately impair that right, a constitutional violation occurs only at trial."). Where the two are at odds, however, we are bound to follow our own binding precedent rather than Supreme Court dicta. *See Ayala v. United States*, 550 F.2d 1196, 1200 (9th Cir.1977) (holding that Supreme Court dicta is not binding).

tion in question has been previously held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted). We must determine, in other words, whether a reasonable officer in Sergeant Chavez's position would have known that his conduct violated Martinez's Fifth and Fourteenth Amendment rights to be free from coercive interrogation. Because "whether [a] confession was obtained by coercion or improper inducement can be determined only by an examination of all of the attendant circumstances," *Haynes,* 373 U.S. at 513, 83 S.Ct. 1336, our holding will necessarily be a narrow one confined to the specific facts of this case. Nor do we opine on the appropriate measure of damages for such a violation; that is for the jury to decide. *See Cooper,* 963 F.2d at 1245 ("[T]he fact that [the suspect] never formally was charged in court and none of his statements ever were offered in evidence to his potential detriment is relevant only to damages, not to whether he has a civil cause of action in the first place.").

The record before us reveals that Sergeant Chavez doggedly pursued a statement by Martinez despite being asked to leave the emergency room several times. He ignored Martinez's pleas to withhold questioning until he had received medical treatment. A reasonable officer, questioning a suspect who had been shot five times by the police and then arrested, who had not received *Miranda* warnings, and who was receiving medical treatment for excruciating, life-threatening injuries that sporadically caused him to lose consciousness, would have known that persistent interrogation of the suspect despite repeated requests to stop violated the suspect's Fifth and Fourteenth Amendment right to be free from coercive interrogation.

The Supreme Court held a virtually indistinguishable interrogation unconstitutional in *Mincey v. Arizona:*

> [The officer] ceased the interrogation only during intervals when [the suspect] lost consciousness or received medical treatment, and after each such interruption returned relentlessly to his task. The statements at issue were thus the result of virtually continuous questioning of a seriously and painfully wounded man on the edge of consciousness.

437 U.S. 385, 401, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *but cf. United States v. George,* 987 F.2d 1428, 1430–31 (9th Cir.1993) (holding that interrogation in the hospital of a coherent suspect who has received *Miranda* warnings is not unconstitutional); *United States v. Lewis,* 833 F.2d 1380, 1384 (9th Cir.1987) (holding voluntary a statement elicited from a suspect just after she returned from surgery and emerged from the effects of general anesthetic where the suspect was alert, responsive, and unresisting).

To the extent Sergeant Chavez's conduct differs from that of the officers in *Mincey,* it is more egregious. Sergeant Chavez did not read Martinez his *Miranda* warnings. *See Davis v. North Carolina,* 384 U.S. 737, 740, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966) ("[T]hat a defendant was not advised of his right to remain silent or of his right respecting counsel at the outset of interrogation ... is a significant factor in considering the voluntariness of statements later made."); *Miranda,* 384 U.S. at 467, 86 S.Ct. 1602 ("[W]ithout proper safeguards the process of in-custody interrogation ... contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."). Chavez persisted in questioning Martinez during, not after, medical treat-

ment. Although Martinez did not, like Mincey, affirmatively request counsel, he repeatedly requested that Sergeant Chavez refrain from interviewing him until his medical treatment was complete and his life was no longer in danger.

In light of the extreme circumstances in this case, a reasonable police officer in Sergeant Chavez's position could not have believed that the interrogation of suspect Martinez comported with the Fifth and Fourteenth Amendments. Accordingly, the district court did not err by holding that on these facts qualified immunity was not available to Chavez to insulate him from Martinez's civil rights suit for damages.

**AFFIRMED.**