**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GARY SIMPSON,

*Plaintiff-Appellant,*

v.

Sergeant JEFFREY THOMAS,

*Defendant-Appellee.*

No. 07-16228

D.C. No.
CV-03-00591-MCE/
GGH

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
April 16, 2008—San Francisco, California

Filed June 11, 2008

Before: Stephen S. Trott and Sidney R. Thomas,
Circuit Judges, and Michael R. Hogan,* District Judge.

Opinion by Judge Trott

*The Honorable Michael R. Hogan, United States District Judge for the District of Oregon, sitting by designation.

**COUNSEL**

Carter C. White, Supervising Attorney, and Anjuli Fiedler and Rachel Golick, Certified Law Students, U.C. Davis School of Law, Davis, California, for the plaintiff/appellant.

Misha D. Igra, Deputy Attorney General, Sacramento, California, for the defendant/appellee.

## OPINION

TROTT, Circuit Judge:

Gary Simpson filed suit under 42 U.S.C. § 1983 alleging that Sergeant Jeffrey Thomas, a corrections officer at the California Medical Facility ("CMF") state prison in Vacaville, California, used excessive force after Simpson did not comply with Thomas's orders. For impeachment purposes, the district court admitted evidence of Simpson's three prior convictions more than ten years old pursuant to Federal Rule of Evidence 609(b), explaining that because his prior convictions were utilized pursuant to California's Three Strikes Law to enhance his current sentence, "those prior strikes were not and do not wash out under state law." Additionally, pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994), the district court excluded any evidence or testimony that Simpson acted in self-defense after Thomas allegedly punched him, explaining that such evidence would invalidate the finding of guilt in Simpson's prison disciplinary proceeding.

After a jury trial resulted in a verdict in Thomas's favor, Simpson filed a motion for a new trial, which the district court denied. *Simpson v. Thomas*, No. 2:03-CV-00591, 2007 WL 1687092 (E.D.C.A. June 8, 2007).

We have jurisdiction pursuant to 18 U.S.C. § 1291, and we reverse and remand for a new trial. We hold that the use of prior convictions older than ten years to enhance a sentence for a separate conviction pursuant to California's Three Strikes Law does not bring those prior convictions within the ten year time limit of Federal Rule of Evidence 609. Additionally, we hold that *Heck* does not create a rule of evidence exclusion and therefore may not be used to bar relevant evidence.

# I

## BACKGROUND

### A. *Factual Background*

In May of 2000, Simpson pled nolo contendere to second degree armed robbery. He was sentenced to 216 months in state prison. The sentence included 60 months for the armed robbery plus a 156 month enhancement for his prior felonies.

This case arises out of an altercation on March 22, 2002, between Simpson and Thomas while Simpson was a prisoner at CMF. Both parties agree that Simpson refused to immediately comply with Thomas's order to remove a sheet from his cell window. After Simpson refused to remove the sheet, Officer Michael Webb unlocked the cell door, and Thomas entered the cell. The parties dispute what happened next.

### 1. *Simpson's Testimony*

Simpson testified that he got down off his bunk when Thomas asked him to, but refused to "turn around and cuff up." Simpson said that Thomas called him a profane name, took out his pepper spray, and threatened to use the spray. Simpson turned around and told Thomas he did not need to use the pepper spray. As Simpson turned around, "a struggle ensued" and Webb pepper sprayed both Simpson and Thomas. Eventually, Simpson "had [Thomas] by the neck . . . and took him down to [Simpson's cellmate's] bunk." During the struggle, Simpson grabbed Thomas's pepper spray and "somehow it got on the floor." After Simpson's cellmate told Simpson to let Thomas up, Simpson told Thomas, "I'm going to let you go, and I'm going to get up and put my hands behind my back."

When Simpson released Thomas, Thomas grabbed Simpson's hands and "roughed me out of the cell." Once out of the

cell, Simpson was getting to the ground when Thomas slammed him down. After he was on the ground, Simpson said Thomas "punched me a few times on the right side of my face."

### 2.  *Thomas's Testimony*

Thomas testified that he ordered Simpson to come out of the cell, and initially, Simpson complied. Thomas said that as Simpson moved toward the door, he ordered Simpson to turn around to be handcuffed, but Simpson resisted. Simpson pushed Thomas onto the lower bunk and held him down by the neck. Simpson grabbed Thomas's pepper spray out of his holster and somebody else took it from Simpson. Webb came into the cell and pulled Simpson off of Thomas. Thomas said that Simpson did not voluntarily let him up.

After Webb pulled Simpson off of him, Thomas ordered Simpson out of the cell and onto the ground, but Simpson did not comply. Thomas grabbed Simpson in a bear hug and forced him to the ground. After Simpson was on the ground, Thomas got on Simpson's back to hold him down and then ordered him to put his hands behind his back. Simpson complied. Thomas denied punching Simpson outside of the cell, but said that he probably hit Simpson when he was trying to get Simpson off of him. Webb testified that Thomas punched Simpson while they were in the cell.

### B.  *The 115 Report*

A CMF disciplinary officer reported the incident in a 115 Rules Violation Report ("115 Report"). The hearing officer found Simpson guilty of violating California Code of Regulations tit. 15, § 3005(c) "for the specific act of battery on a Peace Officer." He then assessed Simpson 150 days of behavioral credit forfeiture. The prison referred the case to the Solano County District Attorney for possible felony prosecution, but the D.A. declined to file any charges. Simpson

sought habeas relief from the disciplinary hearing, but it was denied as untimely.

## C. *Motions in Limine*

### 1. *Motion One—Rule 609*

Prior to the trial in Simpson's § 1983 suit, Simpson filed a motion in limine to exclude evidence of his prior felonies. The district court denied the motion and admitted evidence of three prior felony convictions for: 1) burglary in 1986; 2) possession of narcotics in 1989; and 3) possession of marijuana in 1993. Although the record does not contain evidence of the exact release dates on each of these convictions, a probation report in the record indicates that all three convictions fall outside the ten-year time limit of Federal Rule of Evidence 609(b).[1]

The district court admitted the prior convictions in spite of Rule 609(b)'s ten-year time limit because under California's Three Strikes Law, the prior convictions were "utilized by the sentencing court when they made the determination to give him [the sentence being served at the time of trial]" and thus "those prior strikes were not and do not wash out . . . regardless of the fact that they may be older than ten years." The district court said also that "one of the things that's utilized by the institution to determine the level of security, classification, location . . . is all based on the plaintiff's prior felony convictions."[2]

---

[1]In January of 1987, Simpson was sentenced to forty months for the 1986 burglary. In January of 1990, he was sentenced to two years for the 1989 possession conviction. Finally, in March of 1994, he was sentenced to sixteen months for the 1993 marijuana conviction. The trial in the present case took place in March of 2007.

[2]Thomas does not defend the district court's evidentiary ruling on the second ground.

### 2.  *Motion Two—Heck v. Humphrey*

Simpson sought to testify that Thomas punched him as soon as he entered the cell, and that Simpson's subsequent actions were in self-defense. Citing *Heck*, 512 U.S. 477, the district court granted Thomas's motion in limine and refused to allow Simpson to testify that Thomas had punched him first because such testimony would invalidate the result of CMF's disciplinary proceeding against Simpson related to the incident. Both the district court and Thomas agreed that "[t]his does not, however, foreclose Simpson from pursuing his allegations that excessive force was used following his assault on Sergeant Thomas."

## II

## STANDARD OF REVIEW

We review evidentiary rulings for abuse of discretion. *United States v. Plancarte-Alvarez*, 366 F.3d 1058, 1062 (9th Cir. 2004). We review de novo a district court's interpretation of the Federal Rules of Evidence. *United States v. Sioux*, 362 F.3d 1241, 1245 n.5 (9th Cir. 2004). The decision to exclude evidence will be reversed only if it is "more likely than not that the error affected the verdict." *United States v. Edwards*, 235 F.3d 1173, 1178 (9th Cir. 2000). We review de novo pure questions of law. *United States v. Mateo-Mendez*, 215 F.3d 1039, 1042 (9th Cir. 2000).

## III

## DISCUSSION

A.  *Federal Rule of Evidence 609*

1.  *Three Strikes*

**[1]** We are presented with an issue of first impression: whether prior convictions more than ten years old may be

used for impeachment purposes under Federal Rule of Evidence 609 ("Rule 609") if those prior convictions are used to enhance a sentence for a separate conviction that falls within the ten-year time limit of Rule 609(b). We hold that such convictions do not endure for the purposes of Rule 609(b) and therefore are not admissible against the witness, unless the court determines "that the probative value of the conviction supported by specific facts and evidence substantially outweighs its prejudicial effect." *See* FED. R. EVID. 609(b). Furthermore, we hold that in this case, it is more likely than not that the admission of the convictions affected the verdict, and therefore the case must be remanded for a new trial.

**[2]** Rule 609(a)(1) provides "evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year . . . ." Rule 609(a)(1) is subject to the time limit of 609(b). Under 609(b), the evidence of a conviction

> is not admissible if a period of more than ten years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

**[3]** The district court erred in admitting the evidence of Simpson's three prior felony convictions. In *United States v. Kaluna*, we addressed a challenge to the Federal Three Strikes Provision, 18 U.S.C. § 3559(c)(1). 192 F.3d 1188, 1198-99 (9th Cir. 1999) (en banc). There, we declined to hold that such a provision violated the Double Jeopardy Clause, observing that "the enhanced punishment imposed for the later offense is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes, but instead as a stiffened penalty

for the latest crime." *Id.* (internal quotation marks omitted). We believe that this same reasoning applies to California's Three Strikes Provision, Cal. Penal Code §§ 667, 1170.12. *See Allen v. Stratton*, 428 F. Supp. 2d 1064, 1078 (C.D. Cal. 2006) (citing *Witte v. United States*, 515 U.S. 389, 400 (1995) and holding that "the use of prior convictions to enhance a later sentence under a recidivism statute, such as [California's] Three Strikes law, does not offend double jeopardy principles. . . .").

**[4]** In the present case, Simpson's prior convictions enhanced the length of his current conviction under California's Three Strikes Provision. However, *Witte*, *Kaluna*, and *Allen* preclude any conclusion other than that Simpson had already completed his sentence for the prior convictions at the time his current sentence was enhanced. If we were to adopt the district court's position and permit the use of prior convictions older than ten years for impeachment purposes under Rule 609, then the prior convictions would no longer be "a stiffened penalty for the latest crime." *Witte*, 515 U.S. at 400.

**[5]** Furthermore, the plain language of 609(b) excludes evidence of a conviction if it has been more than ten years "since the date of the conviction or the release of the witness from the confinement *imposed for that conviction*." FED. R. EVID. 609(b) (emphasis added). We see no reason to construe this language to mean anything other than exactly what it says. Although the sentence Simpson was serving at the time of this trial was admissible because that conviction fell within the parameters of Rule 609(b), the three prior convictions were not admissible because, at the time of trial, it had been more than ten years since Simpson was released on the three prior convictions. Thus, those prior convictions did not fall within the plain language of Rule 609(b).

### 2. *Probative Value*

**[6]** Although we conclude that the three prior convictions are more than ten years old as defined in 609(b), they are still

admissible if the court determines "that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." *Id.* The committee notes to the 1974 Enactment to Rule 609(b) state:

> It is intended that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances . . . . requiring the court to make specific findings on the record as to the particular facts and circumstances it has considered in determining that the probative value of conviction substantially outweighs the prejudicial effect.

**[7]** The district court said that it did not find that the admission of the prior convictions "would be so prejudicial as to outweigh the probative value." This summary conclusion by the district court was erroneous for three reasons. First, the language used by the district court inverts the requirement of Rule 609(b) by requiring the prejudice to outweigh the probative value. Second, the district court did not offer specific facts and circumstances to support its conclusion, as required by Rule 609(b). Third, the language of the Rule requires that the probative value *substantially* outweighs the prejudice.[3] Here the district court made no such determination.

---

[3]We note also that our previous cases have set forth a list of factors a district court should consider in a criminal case when determining whether the probative value outweighs the prejudice. "These factors are: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of defendant's testimony; and (5) the centrality of defendant's credibility." *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000). Nothing in the record indicates that the district court considered any of these factors. Although we have never held that such factors should be considered in a civil case, and do not do so here, we think that, under the circumstances of this case, consideration of these factors by the district court on remand would be appropriate.

**[8]** Based on the foregoing, we conclude that the admission of the convictions was an abuse of discretion.

3. *Affect on the Outcome of the Trial*

**[9]** In order for us to conclude that the admission of the prior convictions warrants reversal, we must be persuaded that their admission affected the outcome of the trial. *Edwards*, 235 F.3d at 1178. We have previously held that it was not harmless error to admit evidence of prior convictions where

> the result in the case turned almost entirely on the relative credibility of the party-witnesses. Juries often view citizens' claims of police abuse with skepticism. In this context, the improper introduction of evidence that [the plaintiff] had been a juvenile offender and had been convicted of a felony as an adult was clearly prejudicial to his chances of receiving fair consideration from the jury.

*Powell v. Levit*, 640 F.2d 239, 241 (9th Cir. 1981).

**[10]** As in *Powell*, the result in this case turned almost entirely on the credibility of the witnesses—it came down to whether the jury believed the testimony of Thomas and the other guards or the testimony of Simpson and his fellow inmates. We conclude that it is more likely than not that admitting the conviction affected the verdict because, although the jurors would have known Simpson was in prison for at least one felony, the knowledge that he had at least three other felony convictions likely prejudiced the jury against Simpson and made them more likely to question his credibility.

**[11]** Because the district court improperly admitted evidence of convictions outside the ten-year limit of Rule 609(b) and did not properly perform the balancing test required by

Rule 609(b), and because it was more likely than not the admission of the convictions affected the verdict, we reverse and remand for a new trial.

### B.  *Heck v. Humphrey*

**[12]** We turn next to yet another issue of first impression in this circuit: whether *Heck v. Humphrey* may be used to bar evidence in a § 1983 claim for excessive force. We conclude that *Heck* does not create a rule of evidence exclusion. Therefore, if, as in this case, a party is permitted to proceed on a § 1983 claim, relevant evidence may not be barred under the rule announced in *Heck*.

In order to reach our ultimate conclusion, we first examine the relationship between § 1983 and the habeas corpus statute, 28 U.S.C. § 2254, and United States Supreme Court cases addressing the use of § 1983 to challenge prison administrative decisions. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983. Section 2254(b), in relevant part, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State; or . . . there is an absence of available State corrective process; or . . . circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254.

**[13]** We have previously outlined the potential conflict between §§ 1983 and 2254 in *Ramirez v. Galaza*, 334 F.3d 850 (9th Cir. 2003). There we summarized the conflict as follows:

> While the Civil Rights Act of 1871 . . . and the federal habeas corpus statute . . . both provide access to the federal courts "for claims of unconstitutional treatment at the hands of state officials, . . . they differ in their scope and operation." *Heck*, 512 U.S. at 480 . . . . Section 1983 provides a remedy for injuries caused by violations of federal law by persons acting under the color of state law. "Congress's purpose in enacting § 1983 was to create a novel civil remedy for violation of established constitutional rights." *Martinez v. City of Oxnard*, 270 F.3d 852, 856 n.2 (9th Cir. 2001). Given this unique legislative intent to provide a federal forum for the vindication of federal rights, courts historically declined to require § 1983 plaintiffs to exhaust state remedies. Congress altered this tradition in 1996 with the enactment of the Prison Litigation Reform Act by requiring prisoners to exhaust all available administrative remedies before filing a § 1983 action. 42 U.S.C. § 1997e(a) . . . .

> In contrast, the federal habeas corpus statute
> explicitly requires state prisoners to first seek relief
> in a state forum. 28 U.S.C. § 2254(b). This exhaus-
> tion requirement "is rooted in considerations of
> federal-state comity," and allows "the state court
> system that has convicted a defendant the first
> opportunity . . . to correct the errors made in the
> internal administration of their prisons." *Preiser v.
> Rodriguez*, 411 U.S. 475, 491-92 . . . (1973). The
> burden of satisfying the exhaustion requirement of
> § 2254, and the absence of a similar restriction in
> § 1983, left the two statutes on a "collision course."
> *Heck*, 512 U.S. at 492 . . . (Souter, J., concurring in
> the judgment).

334 F.3d at 854-55 (internal citations and footnotes omitted).
Thus, as we explained in *Ramirez*, there is potential for con-
flict between the two statutes.

We turn next to a summary of the United States Supreme
Court cases addressing this conflict. The Court first addressed
the potential conflict between § 1983 and § 2254 in *Preiser v.
Rodriguez*, 411 U.S. 475 (1973). In *Preiser*, following prison
disciplinary proceedings leading to the deprivation of good-
time credits, prisoners brought suit under § 1983 challenging
the constitutionality of the disciplinary proceedings. 411 U.S.
at 476-77. The Court explained:

> The broad language of § 1983, however, is not con-
> clusive of the issue before us. The statute is a general
> one, and, despite the literal applicability of its terms,
> the question remains whether the specific federal
> habeas corpus statute, explicitly and historically
> designed to provide the means for a state prisoner to
> attack the validity of his confinement, must be
> understood to be the exclusive remedy available in
> a situation like this where it so clearly applies.

*Id.* at 489. The Court further explained that in contrast to § 1983, § 2254 requires the exhaustion of state remedies. *Id.* at 489-91. The Court continued: "The strong considerations of comity that require giving a state court system that has convicted a defendant the first opportunity to correct its own errors thus also require giving the States the first opportunity to correct the errors made in the internal administration of their prisons." *Id.* at 492. Thus, the court concluded that a state prisoner cannot use a § 1983 action to challenge "the fact or duration of his confinement," *id.* at 489, because such an action lies at "the core of habeas corpus," *id.* at 487.

In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court took on the issue of whether prisoners could use § 1983 to obtain restoration of good-time credits and damages. 418 U.S. at 553-54. The Court reaffirmed its holding in *Preiser* and held that the prisoners could not seek restoration of good-time credits under § 1983 because restoration of good-time credits challenged "the very fact or duration of their confinement." *Id.* at 554. However, the Court permitted the prisoners to use § 1983 to obtain a declaratory judgment "as a predicate to a damages award," explaining that *Preiser* did not bar such a claim "and because under [*Preiser*] only an injunction restoring good time improperly taken is foreclosed, neither would it preclude a litigant with standing from obtaining by way of ancillary relief an otherwise proper injunction enjoining the prospective enforcement of invalid prison regulations." *Id.* at 554-55.

Twenty years later, the Court revisited the relationship between § 1983 and § 2254 in *Heck*. In *Heck*, a prisoner initiated a § 1983 action seeking damages but not release from custody. 512 U.S. at 478-79. The prisoner alleged that the defendants—prosecutors and a police officer—destroyed evidence, used unlawful identification procedures, and employed improper investigative techniques, resulting in the prisoner's conviction and imprisonment. *Id.* at 479. The Court affirmed the dismissal of the suit, holding that

in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486-87 (internal footnote omitted). The Court explained that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. "But if the district court determines that the plaintiffs action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* (internal footnote omitted).

Since the inception of the rule in *Heck*, the Court has only addressed this issue a few times, and in none of those cases did the Court address the use of *Heck* to bar evidence. For example, in *Edwards v. Balisok*, 520 U.S. 641, 643 (1997), the Court applied *Heck* to a § 1983 claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits. There, it explained that "[t]he principal procedural defect complained of by [plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." 520 U.S. at 646. Consequently, the Court held the claim was not cognizable under § 1983. *Id.* at 648.

More recently, in *Wilkinson v. Doston*, 544 U.S. 74, 76 (2005) the Court addressed the issue of whether two prisoners could seek injunctive and declaratory relief pursuant to

§ 1983 when challenging Ohio's state parole procedures. The Court summarized its prior consideration of the interplay between §§ 1983 and 2254:

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement-either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks-not where it simply "relates to"-"core" habeas corpus relief, *i.e.*, where a state prisoner requests present or future release. *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

544 U.S. at 81-82 (internal citation omitted). Thus, the Court concluded, the prisoners' claims in *Wilkinson* were cognizable under § 1983 because

> Success for Dotson does not mean immediate release or a shorter stay in prison; it means at most new eligibility review, which at most may speed *consideration* of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus."

*Id.* at 82 (internal citations omitted).

**[14]** None of these Supreme Court cases specifically address or even imply that *Heck* may serve as an evidentiary bar. Rather, we believe that this entire line of cases and repeated discussions of the interplay between § 1983 and § 2254 demonstrate that the Supreme Court's intent in announcing the rule in *Heck* was to prevent prisoners from subverting the requirements of § 2254 by filing suit under § 1983. Consequently, all of these cases discuss whether a claim itself is viable, not whether evidence is admissible.

**[15]** Since *Heck* was decided, we too have frequently considered its implications on § 1983 cases. *See*, *e.g.*, *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc); *Ramirez*, 334 F.3d 850; *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2003) (as amended); *Sanford v. Motts*, 258 F.3d 1117 (9th Cir. 2001); *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997); *Smithart v. Towery*, 79 F.3d 951 (9th Cir. 1996). However, like the Supreme Court, we have never held or even implied that *Heck* could be used to bar evidence—rather, applying Supreme Court precedent, we have repeatedly considered whether *Heck* bars a claim under § 1983.

In addition to our analysis above, we find support for our decision in criminal cases permitting evidence relating to past acquittals to be used in a present criminal case. For example,

in *Dowling v. United States*, 493 U.S. 342 (1990), the Supreme Court held that it was not a violation of the Double Jeopardy Clause or the Due Process Clause to admit testimony regarding the circumstances of a prior crime of which the defendant had been acquitted. 493 U.S. at 343-44.

In that case, the suspect was on trial for bank robbery and armed robbery. *Id.* at 344. The government introduced testimony under Federal Rule of Evidence 404(b) by the victim in a robbery that the defendant was acquitted of in an earlier trial. *Id.* at 344-45. The victim identified the defendant as one of the alleged robbers in the prior robbery and described the mask he was wearing and the gun he was carrying during the robbery. *Id.* She identified also another suspect in the first robbery, and that suspect was suspected of acting as the getaway car driver in the second robbery. *Id.*

The government claimed that the twin purposes of the testimony were: 1) to strengthen its identification of the defendant as the bank robber in the second case because the victim in the first case described a suspect wearing a mask and carrying a gun similar to that used in the second case; and 2) to link the defendant to the alleged getaway car driver in the second case. *Id.* at 345.

The defendant argued that under the collateral-estoppel doctrine, his prior acquittal precluded the government from introducing the testimony. *Id.* at 348. The Court rejected this argument, defining "the collateral-estoppel doctrine as providing that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Id.* at 347 (quotation marks omitted). It went on to explain that because "the prior acquittal did not determine an ultimate issue in the present case" and because the government was not required to prove beyond a reasonable doubt in the second robbery that the defendant was the suspect in the first robbery,

"the collateral estoppel component of the Double Jeopardy Clause is inapposite." *Id.* at 349.

Although the collateral-estoppel component of the Double Jeopardy Clause does not bear directly on the issue in the case at bar, we believe that the Court's holding in *Dowling* supports our determination that *evidence* is not barred merely because a claim may be. As in *Dowling*, the burden of proof is different in Simpson's civil case than it was in the prison administrative proceeding finding him guilty of battery. Furthermore, whether Thomas punched Simpson as soon as Thomas entered the cell was not "an issue of ultimate fact" determined in a valid and final judgment in the prison administrative proceeding. *See id.* at 347. In short, the results of the administrative proceeding fall short of the stricter *Heck* requirement that the claims asserted would "necessarily imply" or "demonstrate" the invalidity of the conviction.

**[16]** In light of our analysis of Supreme Court precedent relating to *Heck*, §§ 1983 and 2254, we hold that *Heck* is not an evidentiary doctrine. Therefore, we reverse and remand for a new trial. We conclude that even if the district court determines on remand that Simpson may not file a § 1983 lawsuit relating to any injuries stemming from Thomas's alleged punch upon entering the cell, Simpson is still entitled to tell the jury the entire story—in other words, he may present evidence and/or testimony that Thomas initiated the physical confrontation in the cell by punching Simpson.

## IV

## CONCLUSION

Because the district court improperly admitted evidence under Rule 609(b) and improperly barred evidence under

*Heck*, we reverse and remand for a new trial.[4]

**REVERSED and REMANDED.**

---

[4]In light of our holdings, we need not address the remaining issues raised by Simpson.