**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| WARREN ERIC ARMSTEAD, | No. 13-56600 |
| Plaintiff - Appellee, | D.C. No. 2:11-cv-03363-CAS-MRW |
| v. | |
| KEITH FIELDS; BRIAN MASON, | MEMORANDUM[*] |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted December 9, 2015
Pasadena, California

Before: GOULD and BERZON, Circuit Judges, and STEEH,[**] Senior District Judge.

Defendants-Appellants Keith Fields and Brian Mason appeal the district court's denial of their motion for summary judgment on qualified immunity grounds. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable George Caram Steeh III, Senior District Judge for the U.S. District Court for the Eastern District of Michigan, sitting by designation.

Plaintiff-Appellee Warren Armstead filed suit under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Fields and Mason violated Armstead's Eighth Amendments rights in November 2009 when they disregarded a substantial risk of serious harm by placing Armstead in a cell with José Barahona. Accepting the magistrate judge's report and recommendation, the district court denied Fields's and Mason's motion for summary judgment, concluding that a reasonable factfinder could conclude that the two officers had violated Armstead's Eighth Amendment rights. On appeal, Fields and Mason raise three challenges: (1) the district court used an incorrect standard when assessing whether Armstead faced an objective "substantial risk of serious harm" while sharing a cell with Barahona; (2) the district court erroneously found that Fields and Mason knew of the substantial risk of serious harm to Armstead but nonetheless disregarded that risk; and (3) the district court erred by concluding that any Eighth Amendment violation Armstead suffered was based on law that had been "clearly established" at the time of the alleged violation.

We review district court rulings on qualified immunity and summary judgment *de novo*. *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the party opposing the summary judgment, there are no genuine issues

of material fact. *Id.* Qualified immunity involves a two-step inquiry: (1) whether the officers' conduct violated a statutory or constitutional right; and (2) whether that right was clearly established at the time of the alleged violation such that a reasonable officer would have known that his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address either prong first, but a plaintiff must succeed on both prongs in order for a district court to deny qualified immunity. *Id.* at 236.

Fields and Mason contend that Armstead did not suffer an Eight Amendment violation. "Deliberate indifference to the risk that an inmate will be harmed by other prisoners constitutes a violation of the Eight Amendment." *Robinson v. Prunty*, 249 F.3d 862, 866 (9th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). When asserting a claim based on a failure to prevent harm, the prisoner must make an objective showing that "he [wa]s incarcerated under conditions posing a substantial risk of serious harm," and a subjective showing that the officer was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and did in fact draw such an inference. *See Farmer*, 511 U.S. at 834, 837.

Here, the district court did not err by concluding that both the objective and subjective tests were satisfied. A reasonable factfinder, viewing the facts in the

3

light most favorable to Armstead, could find that Armstead was subjected to an objectively substantial risk of serious harm when placed in and allowed to remain in the cell with Barahona because Barahona told Fields and Mason three times that he could not be placed with "blacks"; Barahona was in a Southern California Mexican-American gang that has an ongoing "blood feud" with African Americans; Barahona used a racial slur regarding African Americans while being led to the shared cell; Armstead rang the duress button after he was in the cell with Barahona; and Armstead, after Fields and Mason arrived, told them that he was "in harm's way" and that Barahona had already made physical contact with him, and begged not to be left in the cell.

That Barahona had not previously attacked Armstead when they worked on the same crew did not detract from the objective risk. Barahona was quite specific that it was sharing a cell with a black prisoner that violated his gang's precepts.

A reasonable factfinder could also find that the evidence demonstrates that Fields and Mason knew of the substantial risk and deliberately disregarded it. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . ." *Farmer*, 511 U.S. at 842. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the

4

risk was obvious." *Id.* Here, both officers were aware of Barahona's statements and actions, but still declined to give Armstead a different cellmate after Armstead pressed the emergency button and pleaded to be celled elsewhere. Mason had walked away, and Fields had turned and was starting to leave, despite Armstead's pleas that he was in "harm's way." Also, it is of some weight that, although contesting the facts, both Mason and Fields said in their declarations that if both Barahona and Armstead had asked to be separated, they would have done so because this would facilitate their practice "to place inmates in cells where they will remain safe."

Finally, Fields and Mason contend that even if there had been an Eighth Amendment violation, that right was not clearly established when they celled Armstead with Barahona. That argument is unavailing. By November 2009, it was clearly established in the Ninth Circuit that if any officer knew that an inmate was acting dangerously with cellmates, or that an inmate was a threat to his cellmate, but housed the two together anyway, doing so would violate the Eighth Amendment. *See Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002); *see also Robinson*, 249 F.3d at 867 (demonstrating that prison officials violate inmates' constitutional rights when the officials are aware "that placing inmates of different races in [an area] at the same time presents a serious risk of

5

violent outbreaks," but place them together anyway). Given the clearly established law at the time of the alleged violation, a reasonable officer should have known that Armstead's Eighth Amendment rights were violated when he was assigned a cellmate who the officers knew posed a substantial risk of serious harm to him.

**AFFIRMED**.