*323 CHRISTEN, Circuit Judge,
dissenting:
I agree with my colleagues that Snow’s claim for injunctive relief is moot[1] and that the district court did not abuse its discretion in the challenged statements it made to the jury. I write separately because, in my view, the district court did abuse its discretion by allowing introduction of the wholly irrelevant evidence that Snow was a death row prisoner. Because we “must not shrink from [our] obligation to ‘enforce the constitutional rights of all “persons,” including prisoners,’ ”[2] and because it is clear Snow’s allegation of Eighth Amendment violations was not tried on a level playing field, I respectfully dissent.
Snow’s original trial theory was that the Department of Corrections had a pattern of ignoring the medical needs of inmates, and that it was particularly indifferent to the medical needs of death row inmates. But in a pre-trial ruling, the district court excluded evidence of medical treatment and care provided or denied to other inmates. This narrowed the trial’s focus to defendants’ treatment of Snow, making his status as a death row inmate legally irrelevant: after the sole issue became whether defendants had been indifferent to Snow’s need for surgery, his status as a death row prisoner did nothing to make defendants’ indifference more or less probable.[3]
Over defense counsel’s objection, the district court allowed the prosecutor to inform the jury of Snow’s death row status, explaining only that Snow’s status was “context” or “background.” The court offered no further explanation, and none can be gleaned from the record. Indeed, in oral argument to our panel, even counsel for the State could not muster a plausible answer to the question: how did Snow’s status make any fact at issue more or less likely to be true?[4]
If Snow’s death row status were innocuous, a court might appropriately admit it as “background” or “context,” much as a witness’s name, age or occupation. But Snow’s status is not innocuous. The jury did not have to be told that death row is reserved for the most egregious offenders or that any damages awarded Snow would be paid to a man awaiting his execution. Defense counsel predictably focused on Snow’s status as a death row prisoner, leading his closing argument by saying: “I’ve got to tell you I’m a little offended at the notion that a death row prisoner con man comes before you.... ”
We generally afford wide discretion to a district court’s evidentiary rulings, but discretion ends where, as here, “the reviewed decision lies beyond the pale of reasonable justification.”[5] With no probative value to support admitting evidence of Snow’s status, its prejudicial weight clearly required exclusion.[6] The majority faults defense counsel for failing to request a curative instruction, but that would only have reinforced the prejudicial nature of Snow’s status by highlighting it to the jury.[7]
*324 Under the applicable standard, the district court’s error was not harmless. Snow was diagnosed in early 2006 with severe degenerative changes in his hips. Multiple physicians recommended surgery during the following three years before the Department of Corrections finally authorized it. The medical records reflect care providers’ notes that Snow “can barely walk,” that “[t]here is no option here other than surgery for relief,” that Snow’s condition was an “emergency,” and that Snow’s creatinine levels were rapidly increasing because of the pain medication he was forced to take. During that same period, the NDOC denied surgery three times.
In light of this record, I cannot say it is “more probable than not the jury would have reached the same verdict” and would have failed to award at least nominal damages had it not known Snow was on death row.[8]’ For these reasons, I would' reverse and remand for a new trial.[9]

. At oral argument, Snow's counsel indicated that Snow's hip replacement surgery was performed after our court remanded this case to the trial court following Snow’s first appeal. OA Audio Recording at 00:35-00:48.

. Brown v. Plata, 563 U.S. 493, 131 S.Ct. 1910, 1928-29, 179 L.Ed.2d 969 (2011) (quoting Cruz v. Beto, 405 U.S. 319, 321, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (per curiam)).

. Fed.R.Evid. 401.

. See OA Audio Recording at 17:50-20:26, 25:36-27:25.

. See Harman v. Apfel, 211 F.3d 1172, 1175 (9th Cir.2000).

. Fed.R.Evid. 403.

. See Chaffin v. Stynchcombe, 412 U.S. 17, 41, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (Marshall, J., dissenting) (recognizing that "curative instructions may serve only to highlight *324 the problem”); B.K.B. v. Maui Police Dep’t, 276 F.3d 1091, 1105-06 (9th Cir.2002) ("[N]o matter what the instruction, it was impossible to dispel the effect of [the] lurid and prejudicial testimony.”).

. Microsoft Corp. v. Motorola, Inc., 795 F.3d 1024, 1052 (9th Cir.2015) (quoting Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 465 (9th Cir.), cert. denied, —— U.S.-, 135 S.Ct. 55, 190 L.Ed.2d 30 (2014)).

. Id.