TASHIMA, Circuit Judge,
dissenting:
There whs only one contested issue before the jury in this case: consent.[1] D.B. *379 testified that Nez- raped her, while Nez maintained that D.B., who was legally competent to give consent, voluntarily participated in their sexual encounter. The district court committed three discrete errors: (1) excluding D.B.’s statements to Nez on hearsay grounds; (2) admitting Nurse Clinton’s testimony when no hearsay exception applied; and (3) admitting Carli Moncher’s expert opinion testimony without conducting the gatekeeping analysis required by Daubert[2]. Because these errors cumulatively deprived Nez of his due process right to a fair trial, I respectfully dissent from the majority’s affir-mance of Nez’s convictions.
I agree with the majority’s conclusion that the district court erred by prohibiting Nez from testifying about the statements D.B. made to him. However, I disagree that the district court properly admitted Clinton’s repetition of D.B.’s accusations under Federal Rule of Evidence 803(4). “The basis for this [hearsay] exception is the presumption of reliability of statements which flow from ‘the patient’s strong motivation to be truthful’” to secure proper diagnosis and treatment. Guam v. Ignacio, 10 F,3d 608, 612 (9th Cir. 1993) (emphasis added) (quoting Fed. R. Evid. 803(4) Advisory Committee’s Note). The record does not support the majority’s position that D.B. made her statements to Clinton for medical treatment. To the contrary, D.B. met with Clinton at the Flagstaff hospital only because “she was told to be there” by an FBI agent. When asked why she went to Flagstaff, D.B. testified that she went “[f|or an interview,” which she did not wish to participate in. When D.B. arrived at Flagstaff, she first met with forensic interviewer Carli Moncher. Moreover, -the day before D.B. met with Clinton, she had undergone a full physical examination, lasting several hours, at a different medical center. Under these facts, it is unlikely that D.B. was motivated by a desire “to be diagnosed correctly and treated appropriately” when she spoke with Clinton. Id. at 613. Accordingly, I would hold that the admission of her statements was an abuse of discretion.
The majority assumes, without deciding, that the district court erred in admitting Moncher’s expert testimony. I would hold that this also was error. The district court failed to make any “kind of reliability determination to fulfill its gatekeeping function” before admitting Moncher’s expert testimony, Mukhtar v. Cal. State Univ., 299 F.3d 1053, 1066 (9th Cir. 2002), overruled in part on other grounds by Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457 (9th Cir. 2014) (en banc). Nor does the record provide us with sufficient information to determine independently whether Moncher’s expert opinion was reliable. See Estate of Barabin, 740 F.3d at 467.
The cumulative effect of these three errors was to deprive Nez of his due process right to a fair trial. Even where “no single trial error ... is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant.” United States v. Frederick, 78 F.3d 1370, 1381 (9th Cir. 1996). A conviction violates due process where “the combined effect of multiple errors rendered a criminal defense ‘far less persuasive’ and had a ‘substantial and injurious effect or influence’ on the jury’s verdict[.]” Parle v. Runnels, 605 F.3d 922, 928 (9th Cir. 2007) (citation omitted). See also Ayala v. Chappell, 829 F.3d 1081, 1115-17 (9th Cir. 2016) (“We have previously recognized that al *380 though individual errors may not rise to the level of a constitutional violation, a collection of errors might violate a defendant’s constitutional rights.” (alterations, Internal quotation marks and citations omitted)).
Because the sole issue before the jury was consent, a common “thread r[an] through the trial errors in this case”: the improperly excluded evidence supported Nez’s defense, and the erroneously admitted evidence bolstered the government’s case. See Parle, 505 F.3d at 930. The exclusion of D.B.’s statement—“Come on, Martin. Kiss me”—precluded Nez from fully presenting his defense that D.B. initiated their sexual encounter. See id. at 932-34 (holding that reversal of a murder conviction was warranted where the errors “went to the heart of the defense’s case and the only issue before the jury”). This verbal imperative from D.B., if believed, would have been highly probative of consent. Instead, Nez was permitted to testify only about his interpretation of D.B.’s physical actions.
Moreover, permitting the jury to hear Clinton’s detailed recitation of D.B.’s story a second time, as well as a description of her demeanor, 'bolstered D.B.’s credibility. Because Nez and D.B. were the only two direct witnesses, their respective credibility was paramount. D.B.’s description of her version of the events, as repeated by Clinton, was strong corroboration of D.B.’s testimony, bolstering her credibility. Clinton’s testimony also reinforced D.B.’s account by exposing the jury to D.B.’s side of the story twice.
Finally, Moncher’s expert testimony im-permissibly allowed the jury to treat D.B.’s cutting episode as objective evidence supporting the government’s case. “Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.” Daubert, 509 U.S. at 595, 113 S.Ct. 2786. Here, the prejudicial effect of Moncher’s testimony was particularly significant, given the lack of any other corroborating evidence supporting the prosecution’s case. Moncher’s unsubstantiated testimony as a purported expert that self-cutting by a child victim may indicate noneonsensual sex created the misleading impression that there was more reliable evidence supporting the government’s case than there actually was.
“[Wjhere the government’s case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors.” Frederick, 78 F.3d at 1381. Here, the evidence against Nez was “not overwhelming and .,. the case was a close one.” See id. The heart of the prosecution’s case was D.B.’s testimony, which contained several unresolved inconsistencies. That testimony was impermissibly bolstered and emphasized, making it appear more credible than it otherwise would have been. At the same time, the district court prevented Nez from presenting a complete version of his defense, including the significant detail of what D.B. said to him to initiate their encounter, in a case where the sole question before the jury was whose word to believe. In sum, these errors, in combination, rendered Nez’s defense “‘far less persuasive than it might have been’ and therefore had a ‘substantial and injurious effect or influence on the jury’s verdict,’ ” violating Nez’s due process rights. Parle, 505 F.3d at 928 (citations omitted).
For the foregoing reasons, I would reverse the convictions and remand for a new trial. I therefore respectfully dissent.

. Nez was tried for and convicted of aggravated sexual abuse under 18 U.S.C. § 2241(a), and abusive sexual contact under 18 U.S.C. § 2244(a)(1). Both of these crimes require the use of force, fear, or the threat of force. It is this element that Nez was contesting when he *379 claimed that the sexual intercourse between him and D.B, was consensual,

. Daubert v. Merrell Dow Pharm., Inc., 509 U.S, 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).