BEA, Circuit Judge,
dissenting in part:
I concur in the panel majority opinion’s conclusions and reasoning regarding the jury instructions, the scope of the defendants’ turnover duty, and the admission of the statements by Murray’s medical experts. I write separately to dissent on the issue of whether the district court properly admitted the testimony of Dr. Morse regarding the harms that can be caused by low voltage electric shocks. Put simply, the district court failed to exercise properly its gatekeeping function by permitting Dr. Morse’s testimony without examining the methodologies by which Dr. Morse identified the injuries purportedly caused by low voltage shocks, even though Dr. Morse could not explain the causal mechanism by which such injuries occur.
As explained in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591-93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which interpreted Federal Rule of Evidence 702, the touchstone for admissibility of testimony by scientific experts is “whether the reasoning or methodology underlying the testimony is scientifically valid.” Given the many ways that scientific expertise is developed and applied, however, the Supreme Court and this court have recognized that the four factors articulated in Daubert do not constitute a mandatory checklist. Id. at 593-95, 113 S.Ct. 2786. Rather, each factor should be addressed to the extent relevant to a particular expert’s testimony. Id.; see also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 153, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1317 (9th Cir. 1995). While an appeals court may not second guess the sound judgment of the district court on the admissibility of expert testimony, Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997), the unreasonable failure to consider a relevant Daubert factor is an abuse of discretion. See Kumho Tire, 526 U.S. at 152, 119 S.Ct. 1167.
In this case, the district court evaluated only two of the relevant Daubert factors: whether the expert’s research was peer reviewed and whether it was generally accepted by other scholars. The district court failed to consider whether Dr. Morse’s theory can be and has been tested and the error rate associated with the methodologies he relied upon to render his opinion. The district court did not offer any reasons as to why it overlooked these two factors.
First, the relevance of Dr. Morse’s testimony to Murray’s injuries is unclear. Dr. Morse testified that Murray’s symptoms were consistent with the low voltage shocks he had studied, but Dr. Morse’s expert report discusses low-voltage shocks as being those of 110 volts. This was roughly twice the voltage of the shock experienced by Murray, which was somewhere between 41 and 58 volts. Expert testimony should not be admitted if it is not relevant, which this court has defined as evidence that “logically advanee[s] a material aspect of [a] party’s case.” Estate of Barabin v. AstenJohnson, Inc., 740 F.3d 457, 463 (9th Cir. 2014) (citation omitted). In this case, the definition of “low voltage” relied upon by Dr. Morse (110 volts) differed significantly from the “low voltage” shock suffered by Murray (41-58 volts). Such a difference raises serious doubts *927 about the relevance to Murray’s injuries of Dr. Morse’s expertise, a doubt which the district court failed to address in its Dau-bert order. The district court failed to cite any record evidence that would allow Dr. Morse’s findings regarding 110 volt shocks to be extrapolated to the lower voltage shock experienced by Murray.
Second, the district court does not explain why the Daubert factors of testability and error rate were not relevant to evaluating the admissibility of Dr. Morse’s expert testimony. As Dr. Morse conceded, the mechanism by which the hypothesized injuries resulting from low voltage shocks occur is not understood. Such an admission should reasonably have led the district court to apply greater scrutiny to the methodology by which Dr. Morse arrived at his hypothesis about diffuse injury from low voltage shock. If the mechanism for an injury is not understood, it is that much more important to ensure the reliability of the methods by which a correlation between low voltage shocks and certain injuries was identified. Instead, the district court ignored the exact Daubert factors that evaluate the rigor of these methodologies. Namely, the district court failed to evaluate whether the theory or technique in question “can be (and has been) tested.” Daubert, 509 U.S. at 593, 113 S.Ct. 2786. While Dr. Morse’s hypothesis that low voltage shocks cause certain injuries can be tested, the record evidence does not establish that Dr. Morse’s theory was tested either through animal testing or other controlled experiments. Even if Dr. Morse is correct that low voltage shocks cause injury, this record does not establish whether such injuries are commonplace or extremely rare results of low voltage shock. In addition, the error rate of the particular research methodologies employed by Dr. Morse to identify the relationship between low voltage shocks and certain injuries was not addressed by the district court. For example, Dr. Morse relies in part on self-reported internet surveys of people who purportedly suffered a low voltage shock. See Michael S. Morse et al., Diffuse Electrical Injury: A Study of 89 Subjects Reporting Long-Term, Symptomatology that Is Remote to the Theoretical Current Pathway, 51 IEEE Transaction on Biomedical Engineering 1449 (2004). By not considering the error rate of such self-reported surveys, the district court ignored the degree to which the survey respondents may have made up or imagined their symptoms, may not have actually received a low voltage electric shock, may have exaggerated their symptoms, or may have misunderstood the questions posed in the survey.
Taken together, the fact that Dr. Morse could not explain the causal mechanism behind the hypothesized relationship between low voltage shocks and certain injuries means that the Daubert factors that address the reliability of the methods— such as error rate and testability-used to identify this correlation had special importance in this case. By ignoring these factors, without stating a reasonable basis for such omissions, the district court’s Dau-bert analysis in fact merely evaluated the general acceptance of Dr. Morse’s theories as demonstrated through certain peer reviewed articles (functionally the same as the Frye test rejected in Daubert) and failed to evaluate the methodologies underlying Dr, Morse’s opinion. This was an abuse of discretion in its gate-keeping function which the deference owed cannot overcome.
Finally, there are important problems with the analysis performed by the district court of Daubert factors of peer review and general acceptance. First, while the district court placed a great deal of weight on the fact that Dr. Morse’s research on low voltage shocks had been subject to *928 peer review, the Supreme Court has explained that the peer review factor is not alone dispositive and. even if an expert’s research .is peer reviewed,' a district court must still ensure that the expert’s opinion is- based on a reliable methodology. Daubert, 509 U.S. at 594, 113 S.Ct. 2786 (“[t]he-fact of publication (or lack thereof) in a peer reviewed -journal thus will be a relevant, though not dispositive, consideration”). Moreover, while the scientific literature in the record does establish that some experts accepted Dr. Morse’s theories, the record makes clear that this acceptance did not rise to the level of general-acceptance as a number of scientists criticized Dr, Morse’s theory as controversial or not persuasive, in part because, as discussed above, the mechanism by which injuries from- low voltage shocks purportedly occur is not understood. See Daubert, 509 U.S. at 594, 113 S.Ct. 2786 (“a known technique which has been able to attract only minimal support within the community. . .may-properly be viewed with skepticism” (citation omitted)).
Because the causal mechanism by which low voltage shocks purportedly cause certain injuries is not understood and because the district court "did not evaluate the' methodologies used by Dr. Morse to identify the posited correlation between low voltage shocks and’ certain injuries, the district court failed to carry out its gatekeeping function, Barabin, 740 F.3d at 464 (“Just as the district court cannot abdicate its role as gatekeeper, so too must it avoid delegating that role to the jury.”), For these reasons, I respectfully dissent.