CHRISTEN, Circuit Judge, with whom RAWLINSON, M. SMITH, and HURWITZ, Circuit Judges, join, and with whom BYBEE, Circuit Judge, joins as to Parts I, II, and III,
dissenting in part and concurring in part:
Twenty years ago, the United States Supreme Court observed: “The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.” Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal citations and quotation marks omitted). The majority characterizes Per-alta’s Eighth Amendment claim as arising from a “several-month delay in getting his teeth cleaned and an alleged failure to treat his pain.” But Peralta’s claim is based on the defendants’ failure to put him on the prison’s emergency dental care list for conditions the prison’s dentist admitted qualified for emergency care: severe pain, bleeding gums, and a bacterial infection. Peralta remained on the prison’s routine care list for 18 months. During that time, he developed periodontitis and severe bone loss, and the prison’s treating dentist acknowledged he suffered severe pain.
The decision announced today overturns more than thirty years of circuit precedent by holding that lack of resources is a defense to providing constitutionally inadequate care for prisoners. Because it will deny any remedy for prisoners who have suffered injuries due to prison officials’ deliberate indifference and eliminates an important incentive for improving prison conditions, I respectfully dissent.
I.
Peralta complained of cavities, bleeding gums, and severe pain within days of arriving at California State Prison, Los Angeles County (Lancaster). After about a month without treatment, Peralta filed his first appeal, asking for treatment for his infected teeth, cavities, and severe pain.
Dr. Brooks, a treating dentist at the prison, interviewed Peralta about four months later. He diagnosed Peralta with periodontal disease, a bacterial infection that can cause the gums to swell and bleed and can lead to the loss of the bone that supports the teeth. Dr. Brooks testified that cleaning and scaling is part of the treatment for periodontal disease.
*1090 Dr. Brooks did not doubt that Peralta was in severe pain, and his testimony confirmed that Peralta’s dental problems entitled him to a spot on the emergency list. Working with too few colleagues and too many patients to see, Dr. Brooks did not treat Peralta’s periodontal disease or prescribe antibiotics to treat Peralta’s infection. Instead, he asked Peralta which tooth hurt the most and scheduled that tooth for extraction three months later. Dr. Brooks did not examine Peralta’s other teeth for cavities or infection.
Peralta appealed again, stating that he had been left with bleeding gums and infected teeth and was in severe pain. He received a written response informing him that there were long delays at the prison and that he was on a waiting list for dental care.
The dentists at Lancaster prison kept one waiting list for patients needing routine care and another list for patients needing emergency care. If a prisoner’s request was classified as an emergency, he was entitled to receive treatment ahead of others on the routine care list. Peralta remained on the waiting list for routine dental care, and he waited three more months for his second appointment.
At this visit, Dr. Brooks told him that the tooth could be saved after all, and Peralta decided against the scheduled extraction. Again Dr. Brooks did not prescribe a course of treatment for Peralta’s periodontal disease or clean his teeth. He did not address Peralta’s concern that he had cavities. Peralta received twelve Ibuprofen pills and some medication for his infection, and eleven more months passed before Dr. Brooks saw Peralta again.
By the time of the third visit, Peralta was suffering from advanced periodontitis. We do not need to take Peralta’s word about the nature or severity of his condition; Dr. Brooks testified to these observations and diagnosis at trial. He also testified that Peralta’s gums were bleeding and that he had sustained severe bone loss by the time of the third visit, which occurred about 18 months after Peralta first asked for treatment at Lancaster. This time, Dr. Brooks cleaned Peralta’s teeth but still did not examine them for cavities.
Peralta was transferred to Mule Creek State Prison less than two months later. There, he received treatment for periodontal disease and had seven cavities filled over the course of several visits. Peralta testified that he was happy with the dental care he received at Mule Creek.
The defendants argued at trial that Dr. Brooks was overworked and the prison understaffed. To anyone familiar with the conditions of California’s prisons, it will come as no surprise that prison officials there have inadequate resources. See Brown v. Plata, — U.S. —, 131 S.Ct. 1910, 1923, 179 L.Ed.2d 969 (2011) (“Overcrowding has overtaken the limited resources of prison staff; imposed demands well beyond the capacity of medical and mental health facilities; and created unsanitary and unsafe conditions that make progress in the provision of care difficult or impossible to achieve.”). Nor is it surprising that providers working in chronically understaffed and underfunded prison medical and dental facilities are sometimes unable to provide adequate care. Id. (describing how overcrowding leads to “grossly inadequate provision of medical and mental health care”).
The defendants argued that they should be relieved of liability for any violations of the Eighth Amendment because of the lack of resources at Lancaster. Consistent with Ninth Circuit precedent, Peralta proffered a jury instruction that “the lack of staffing or other resources in the dental department at the Lancaster facility is not *1091 a defense to liability under Section 1983.” Though this had been a correct statement of the law in the Ninth Circuit for approximately thirty years, see Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986); Spain v. Procunier, 600 F.2d 189, 200 (9th Cir.1979), the district court instructed the jury that defendants were entitled to rely on lack of resources as a defense to the allegation that Peralta’s Eighth Amendment rights had been violated.
II.
The Eighth Amendment imposes upon prison officials the duty to provide humane conditions of confinement; prison officials must ensure that prisoners receive adequate food, clothing, shelter, and medical care. Farmer, 511 U.S. at 832, 114 S.Ct. 1970. A prison official violates the Eighth Amendment when two conditions are met: “First, the' deprivation alleged must be, objectively, sufficiently serious; a prison official’s act or omission must result in the denial of the minimal civilized measure of life’s necessities.” Id. at 834, 114 S.Ct. 1970 (internal citations and quotation marks omitted). Though the majority characterizes Peralta’s case as being about “the delay in cleaning his teeth,” in the end the majority recognizes that even the defendants did not contest that Peralta’s medical condition was “objectively, sufficiently serious.” Cf. Hunt v. Dental Dep’t, 865 F.2d 198, 199-200 (9th Cir.1989) (allegation that prisoner suffered bleeding gums and broken teeth for three months while waiting for dental care was sufficient to state a claim for deliberate indifference under § 1983). The first prong of Farmer is not at issue on appeal.
Farmer’s second requirement is that “a prison official must have a sufficiently culpable state of mind.” Farmer, 511 U.S. at 834, 114 S.Ct. 1970 (internal citations and quotation marks omitted). “In prison-conditions cases that state of mind is one of ‘deliberate indifference’ to inmate health or safety.” Id.
Farmer examined the deliberate indifference standard and made clear that a plaintiff need not demonstrate the prison official intended harm, or even that the official knew harm would result from the challenged conditions of confinement. Id. at 835, 114 S.Ct. 1970. Farmer held that a prison official may be liable under the Eighth Amendment for deliberate indifference if “the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.” Id. at 837, 114 S.Ct. 1970. In other words, the official must “consciously disregard a substantial risk of serious harm.” Id. at 839,114 S.Ct. 1970 (internal quotation marks and alteration omitted).
Today, our court overturns more than thirty years of circuit precedent by holding that lack of resources is a defense to a damages claim that a prisoner was denied the constitutionally-required minimum threshold for adequate care. The jettisoned circuit precedent dates back to 1979 when, writing for the Ninth Circuit, now-Justice Kennedy explained that “the cost or inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment.” Spain, 600 F.2d at 200. Our circuit reiterated and reaffirmed this rule in Jones, 781 F.2d at 771, and, much more recently, in Snow v. McDaniel, 681 F.3d 978, 984-87 (9th Cir.2012).
The plaintiff in Jones filed a § 1983 suit seeking damages and injunctive relief against a county jail, jail doctors, supervisory jail personnel, and county officials for deliberate indifference to his medical needs. 781 F.2d at 770. He alleged that he was refused a necessary hernia surgery *1092 because of the county’s “tight budget.” Id. at 771. Our circuit reversed the district court’s dismissal of the claims against the individual defendants,- holding that by alleging he was denied necessary surgery due to budgetary constraints, Jones pleaded sufficient facts to constitute deliberate indifference. See id. at 771-72 (“We find no other explanation in the record than the budget concerns for denying Jones’s surgery. Budgetary constraints, however, do not justify cruel and unusual ‘punishment. ... Because Jones has properly alleged both that he had a serious medical need and that the defendants were deliberately indifferent to that need, he has adequately stated a cause of action under the fourteenth amendment.” (emphasis added)). As in Jones, Peralta’s case permits “no other explanation in the record than the budget concerns” for denying treatment for his “objectively, sufficiently serious” medical condition.
In Snow, we reaffirmed the rule that lack of resources cannot be a defense for the failure to provide constitutionally-required medical care for prisoners. The prisoner in Snow sued doctors and wardens of the Nevada Department of Corrections for declaratory and injunctive relief and damages under § 1983. 681 F.3d at 984. He alleged these officials were deliberately indifferent to his medical needs by denying him necessary hip surgery. Id. at 984-85. Citing Jones, we concluded that the record supported the inference that the defendants denied surgery to Snow due to “improper motives” — namely, “to avoid eventually paying for it” — and that this inference could show the defendants acted with deliberate indifference. See id. at 987.
The majority assures us that prisoners will still be able to bring § 1983 claims if they seek injunctive relief and attempts to distinguish Jones and Snow on the basis that Peralta sought only money damages. But the principle in Jones and Snow was first articulated in Spain, which drew no distinction between the type of relief sought by the plaintiff: “The cost or inconvenience of providing adequate facilities is not a defense to the imposition of a cruel punishment.” 600 F.2d at 200. The majority’s attempt to retroactively apply a newly-minted distinction between claims for injunctions and claims for damages to our decision in Spain is not convincing. There is nothing tentative or limited about Spain’s directive that “cost ... is not a defense to the imposition of a cruel punishment,” id., and, until today, we have never suggested that cost may be a defense to Eighth Amendment claims for damages. In fact, Snow suggests the opposite. Snow specifically examined a plaintiffs claim for damages for defendants’ deliberate indifference to his serious medical needs and rejected the cost defense in that context. See Snow, 681 F.3d at 985-87. Snow’s claim for injunctive relief to remedy a “custom or policy” of inappropriate treatment — which the district court had dismissed as moot — was analyzed separately. See id. at 991.
The rule articulated in Spain, Jones, and Snow recognizes that the constitutionally-required threshold for the humane treatment of prisoners is impossible to safeguard if prison officials are permitted to claim lack of resources as a defense. In the case of California prisons, there can be no doubt that chronic underfunding and overcrowding have plagued prison administrators and the prison population for decades. See Brown, 131 S.Ct. at 1923-26 (describing “exceptional” overcrowding in California’s prisons and the resulting inability to provide minimal, adequate medical care to prisoners). The majority’s decision will effectively prevent prisoners from bringing suits for damages against prison officials who have violated their Eighth *1093 Amendment rights by demonstrating deliberate indifference to serious medical needs: those who actually control prison budgets are immune from damage suits, Tenney v. Brandhove, 341 U.S. 367, 376-79, 71 S.Ct. 783, 95 L.Ed. 1019 (1951) (providing absolute immunity for state legislators); and prison officials responsible for substandard care or conditions will be shielded by the newly-announced “lack of resources” defense.[1] Under the lack of resources defense, even prisoners who suffer grievous injury will be left with no recourse at all — what good is prospective injunctive relief to a prisoner whose appendix has burst? The concern that holding prison officials personally liable would be unfair overlooks the reality that California indemnifies employees for torts committed within the scope of their employment,[2] and pays the cost of their defense.[3]
The majority suggests that I seek an end run around the Eleventh Amendment by subjecting the state to financial pressure to avoid cruelly and unusually punishing its prisoners. But the state’s decision to indemnify Dr. Brooks was voluntary. Without the ability to seek damages, prisoners who sustain injuries from overcrowding and underfunding will be denied any meaningful form of relief, even for grievous violations of the Eighth Amendment. As Judge Hurwitz persuasively explains, California’s freely-assumed obligation to its employees does not change this simple fact. If anything, the new distinction between claims for damages and claims for injunctive relief is an end run around the congressional directive embodied in 42 U.S.C. § 1983 that there should be redress when constitutional rights are violated. Simpson v. Thomas, 528 F.3d 685, 692 (9th Cir.2008) (“Congress’s purpose in enacting § 1983 was to create a novel civil remedy for violation of established constitutional rights.” (citation and internal quotation marks omitted)).
Another overlooked reality is that the majority of cases in which a prisoner successfully proves a violation of his constitutional rights result in low damage awards for the prisoner. See Woods v. Carey, 722 F.3d 1177, 1182 n. 6 (9th Cir.2013) (quoting Margo Schlanger, Inmate Litigation, 116 Harv. L.Rev. 1555, 1603 (2003) (“[T]he mean damages for cases won at trial by inmate civil rights plaintiffs was $18,800, and the median was a mere $1000.”)). Even small damage awards can affect substantial change in prison conditions; yet the rule announced today eliminates this modest, but important, incentive. Owen v. City of Independence, Mo., 445 U.S. 622, 651, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (“Moreover, § 1983 was intended not only to provide compensation to the victims of past abuses, but to serve as a deterrent against future constitutional deprivations, as well.”).
III.
The district court’s jury instruction should not have been given, even under the newly-announced lack of resources defense, because it was not supported by the evidence and it was misleading; the evidence did not show that a lack of resources had anything to do with Brooks’ failure to place Peralta on the emergency care list. See Clem v. Lomeli, 566 F.3d 1177, 1181 (9th Cir.2009) (“[Jjury instructions must fairly and adequately cover the issues presented, must correctly state the law, and *1094 must not be misleading.” (internal quotation marks omitted)).
There is no real question about whether the prison was understaffed; in fact, it was so understaffed that Dr. Brooks testified that the bulk of his workday was spent treating patients on the emergency care list.[4] He was only able to see patients on the routiné care list if there was any time remaining at the end of the day. The net effect was that prisoners on the routine care list waited about twelve months before receiving any care.
Because those on the routine care list only saw a care provider if there was any time remaining at the end of the day, the existence of the emergency care list is critical to the outcome of this case. Dr. Brooks testified that the particulars of Peralta’s conditions — including bleeding gums and severe pain — would qualify as a dental emergency that entitled prisoners to be placed on the emergency care list. The Chief Dental Officer at the prison, Dr. Dillard, also testified that complaints of tooth pain and bleeding gums were given higher priority than routine cleanings. Yet Peralta was never moved to the emergency care list, and the defendants did nothing to rebut the evidence that the prison’s overextended staff would have more promptly provided dental care to Peralta if he had been given a spot on that list. The district court’s instruction was unsupported and misleading because defendants offered no evidence to show that lack of funding had anything to do with the failure to move Peralta from the routine care list to the emergency care list.
The majority suggests Peralta invited error by proffering a jury instruction that directed the jury to disregard evidence of understaffing and a lack of resources at the prison. This argument is premised on the assertion that “Peralta’s proposed instruction presupposed that there was sufficient evidence about the lack of resources at Brook’s disposal.” This mischaracter-izes Peralta’s argument. Peralta’s proffered instruction merely stated that the jury had heard evidence that the prison was understaffed, which they had, and instructed the jury that this lack of resources was not a defense to a claim of deliberate indifference. The instruction actually given to the jury turned the proffered instruction upside down. Peralta’s proffered instruction was a correct statement of the law; he did not invite any error.[5]
Without support from the record, the majority also asserts that placing Peralta on the emergency care list would have inevitably delayed another prisoner’s treatment. This is speculation. The record reveals nothing about whether or how patients on the emergency care list were triaged, or the order in which prisoners on the emergency care list were treated. What we do know is that Peralta would have received care more promptly if he had been moved from the routine care list to the emergency care list because Dr. Brooks was only able to serve prisoners on the routine care list if there was any time left over at the end of each day. The majority concedes that this was the way the emergency care list worked by noting *1095 that prisoners sometimes try to “jump the line” by exaggerating symptoms. Peralta wasn’t asking, for special consideration. He was asking only that he be placed on the emergency list like other inmates with qualifying dental conditions, rather than waiting months on the routine care list until it was discovered he had periodontitis and severe bone loss.
IV.
Before the case went to the jury, the district court entered a directed verdict in favor of Drs. Fitter, the chief medical officer, and Dillard, the chief dental officer. As to Dr. Dillard, the district court found that “[tjhere is no evidence here that [Dr. Dillard] had actual knowledge of a serious medical condition.... At most, he was negligent in the discharge of his duties.” The district court similarly found that there was “no evidence in the record that Dr. Fitter was in fact aware of a serious medical condition which he then treated with deliberate indifference.... At most, his conduct was negligent.” The district court ruled that Dr. Fitter was entitled to qualified immunity but did not make a comparable ruling regarding Dr. Dillard.
I join the majority in affirming the dismissal of Peralta’s claims against Dr. Fitter, but I disagree with the majority’s conclusion that a directed verdict was appropriate on Peralta’s claims against Dr. Dillard. As the supervising dentist, Dr. Dillard testified that he was required by California law to conduct second level appeals. See 15 Cal.Code Reg. § 3084.7(d)(2). Dr. Dillard also testified that he was the only supervisor with the expertise to determiné whether the first level response to an inmate’s complaint was proper. But Dr. Dillard testified that it was his practice to authorize someone else to sign second level responses on his behalf when he was to be absent in order to process appeals quickly. Dr. Dillard conceded that prison staff were able to get extensions to review appeals, but he testified that “no one likes to be late on appeals because it doesn’t look good and the warden doesn’t favor that.” Apparently to avoid an untimely response that wouldn’t look good, Dr. Dillard did not conduct or sign Peralta’s second level appeal, nor was it even signed by a dentist. Instead, Dr. Dillard arranged for a prison physician to review the dental appeals in his place. Dr. Dillard never met or examined Peralta, or looked at Peralta’s dental records, until after Peralta filed his lawsuit.
The majority holds that Dr. Dillard’s failure to review Peralta’s appeal — an obligation conferred upon him by California law — shields him from liability. Unchecked, this rule will allow care providers to defeat claims of deliberate indifference by arguing that they had no actual knowledge of the prisoner’s condition, even if that lack of knowledge is the result of failing to perform duties expressly assigned to them. The majority not only charts a path that permits prison officials to escape liability by arguing that they have inadequate funds to provide emergency care to inmates, it condones an escape hatch from liability available to officials willing to look the other way or who fail to perform assigned duties that might cause them to gain actual knowledge of an inmate’s condition. Neither circuit nor Supreme Court authority permits such a result.
In Farmer, the Supreme Court rejected concerns that prison officials could escape liability by “ignoring] obvious dangers to inmates,” reasoning that a plaintiff need only show the “official acted or failed to act despite his knowledge of a substantial risk of serious harm.” Farmer, 511 U.S. at 842, 114 S.Ct. 1970. A prisoner is not required to show that an official intended *1096 for harm to occur, or that the official had actual knowledge that harm would occur, to show that the Eighth Amendment has been violated. Id.
Judgment as a matter of law is only appropriate if no reasonable juror could find in Peralta’s favor. See El-Hakem v. BJY Inc., 415 F.3d 1068, 1072 (9th Cir.2005). Here, a reasonable jury could conclude that some Lancaster prisoners’ emergency dental problems would go unaddressed if the only staff dentist qualified to review first level appeals did not actually review them. Dr. Dillard knew he was obligated to review the first level appeals, and he knew he was the only staff dentist qualified to do so. On this record, a jury could conclude that Dr. Dillard did not fulfill his obligations and consciously disregarded a substantial risk of serious harm to the dental needs of prisoners at Lancaster. The law does not require that Dr. Dillard intended harm to result. Judgment as a matter of law was inappropriate.
y.
“A prison that deprives prisoners of basic sustenance, including adequate medical care, is incompatible with the concept of human dignity and has no place in civilized society.” Brown, 131 S.Ct. at 1928. “If government fails to fulfill this obligation, the courts have a responsibility to remedy the resulting Eighth Amendment violation.” Id.
The decision announced today overturns more than thirty years of circuit precedent by holding that a lack of resources is a defense to providing constitutionally inadequate care for prisoners. It effectively eliminates § 1983 suits for damages against prison officials, denies relief to those prisoners who have already suffered injuries, even when they are grievous, and permits prison officials to escape liability by failing to perform job duties imposed by law. For these reasons, I respectfully dissent.

.The majority suggests that a prisoner could pursue a Monell claim for damages against a municipal entity. But municipal entities do not operate state prisons.

. Cal. Gov’t Code § 825.

. Cal. Gov’t Code §§ 825, 995.

. That the staff was over-committed cannot be disputed. As the majority notes, Dr. Dillard testified that state policy called for a ratio of one dentist for every 950 prisoners, but the inadequate resources allocated to Lancaster left the prison with a ratio as high as one dentist to every 1,500 prisoners.

. Error is only invited when the objecting party (1) proposed the allegedly flawed jury instruction; and (2) intentionally waived a known right by doing so. United States v. Perez, 116 F.3d 840, 845 (9th Cir.1997) (en banc).